UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CLARENCE JOHNSON,

Plaintiff,

vs.

MANDARICH LAW GROUP, LLP,

Defendant.

NO. 2:25-cv-02142-MLP

**PLAINTIFF'S:**
**(A) RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(B) REPLY IN SUPPORT OF SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR:

July 20, 2026

## I.    INTRODUCTION[1]

When Plaintiff Clarence Johnson brought this case in King County Superior Court, the Complaint presented a straightforward inquiry: Whether Defendant MLG violated state and/or federal law in serving Mr. Johnson with a lawsuit lacking a coherent case number, particularly in light of RCW 19.16.250(27) (an outright prohibition on serving a case without a case number). MLG's efforts to overcomplicate the matter should be disregarded, as this issue is as straightforward today as when this case began.

---

[1] In the interest of brevity, Plaintiff will file this conjoined response and reply brief; there is no reason for duplicative briefing on this issue.

PLAINTIFF'S RESPONSE/REPLY RE: MOTIONS FOR
SUMMARY JUDGMENT - 1
2:25-cv-02142-MLP

Defendant MLG appears to struggle with strict liability, injecting its briefing with MLG's subjective intentions and explaining how it never meant for this to happen.[2]  Plaintiff gets it.  MLG offloaded its work to its process server and (while MLG admits it lacks any evidence) that is likely where things went wrong; it is a sad consequence of outsourcing work.  Similar outcomes occur in many areas of law:  A small business owner may contract for payroll services, but if the contractor is sloppy and underpays an employee, the buck stops with the business owner – she is liable for underpayment of wages.  Likewise, a person may have the gentlest dog in town, but if a friend walks the dog and someone gets bitten, the dog owner is responsible for the injuries.  Whether liability arises as a nondelegable duty or as straightforward liability imposed by statute, MLG, a licensed collection agency, is required to comply with the Washington Collection Agency Act.  There is no exception for outsourcing responsibilities under the Act.

MLG's "defense" – that the legislature only prohibits collection agencies from serving cases without a case number, but that prohibition is easily evaded by routine business practice (hiring a process server) – is absurd.  There can be no dispute as to the meaning of RCW 19.16.250(27) – a collection agency is responsible for its lawsuits and how they are served.  The statute would be devoid of meaning under MLG's wishful interpretation.

Finally, MLG's "bona fide error" defense (which could apply only to FDCPA claims) fails immediately.  This is not a close call; plenty of Western District of Washington courts have examined the Ninth Circuit's contours of the "bona fide error" defense and concluded that simply relying on someone else to do something is not a "procedure."  MLG's supposed procedure – that it relies on ABC Legal to file and serve things correctly – has no ability to "avoid" any errors at

---

[2] At the same time, MLG appears strangely unwilling to admit a basic fact (that Mr. Johnson received what he received), referring to this as an "alleged" fact or "alleged" defect.  There is no *genuine* dispute as to what Mr. Johnson was served with.

PLAINTIFF'S RESPONSE/REPLY RE: MOTIONS FOR
SUMMARY JUDGMENT - 2
2:25-cv-02142-MLP

**ANDERSON | SANTIAGO**
207B SUNSET BLVD. N
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

all. Worse, this same series of events could be repeated many times over and MLG's "procedure" would do nothing to prevent it. There is no "bona fide error" defense which MLG can establish.

Again, Plaintiff reiterates that liability is (or at least should have been) a simple issue for adjudication. Mr. Johnson was served with a collection lawsuit which lacked any case number; by statute *and* court rules, this is prohibited conduct.[3] [To be clear, Plaintiff's claims are not only that MLG violated RCW 19.16.250(27), but that even absent that statute, it would *still* defy court rules to serve a case without a legible case number, and it would *still* be unfair and/or deceptive to do so, particularly in a debt collection context, thus violating the CPA and FDCPA all the same.]

MLG's efforts to overcomplicate this matter fail; there is no viable defense, the statute means what it says, and MLG may not outsource its obligations to comply with Washington law. MLG's protestations do not alter the operation of state or federal law, and its finger-pointing has no bearing on the outcome of this matter. Mr. Johnson, a veteran and retired police officer, was served with a lawsuit which MLG drafted and which MLG signed, but which lacked a case number as required by law. This violates the WCAA, CPA, and FDCPA. Summary judgment in Mr. Johnson's favor is appropriate.

## II.     **LAW AND ARGUMENT**

### A. **Summary Judgment Standard/Incorporation by Reference**

For brevity: The parties have briefed the standard in connection with the cross-motions for summary judgment, and the Court is familiar with the legal standard.

Plaintiff also incorporates his other briefing and submissions by reference to avoid duplication where possible.

---

[3] Even absent RCW 19.16.250(27), in Washington district courts a summons and complaint must be filed first (unlike in Superior Court, *see* CR 3). Thus, there is no circumstance where Mr. Johnson should ever have been served a district court lawsuit lacking a case number.

### B. Plaintiff Withdraws His Claim Based on RCW 19.16.250(9)

To simplify matters, Plaintiff will withdraw his claim as to RCW 19.16.250(9).  MLG contends it sent a pre-suit letter, Mr. Johnson has no record of receiving the letter, but arguably the statute requires only the sending, not the receipt, of such information.  *See* dkt. #14 at 5-7.  Plaintiff has no interest in absorbing the Court's time over factual disputes concerning whether a letter was received and/or whether it is the sending or the receiving that matters.  Plaintiff prevails on his other claim(s) and thus believes justice is best served by withdrawing this one.

### C. Strict Liability and its Consequences

Woven throughout MLG's briefing is a consistent theme that it was not "at fault" in some way.  Strict liability is not concerned with intentions, nor is it concerned with ABC Legal's "historical reliability," or with what MLG did (or did not do) to occasion what happened.  As this Court is aware, there are a variety of policy considerations behind the creation of strict liability statutes, but those policies are not at issue.

Dog bites are analogous – if a dog bites someone, its owner is strictly liable.  *See Finch v. Thurston Cnty.*, 186 Wn.2d 744, 746 (2016); RCW 16.08.040.  There is one exemption for police dogs; the only dog bite issue which can be argued is whether the dog was, in fact, a "police dog." *Id*.

There are many heart-rending tales of mild-mannered dogs who are sweet with children and strangers, but for whatever reason, end up causing a bite injury.  The strict-liability statute is clear and easy to apply – if a dog bites someone, the owner is liable for injuries.  There is no inquiry into the dog's nature, the owner's knowledge, or anything else at all – the only question is "did the

PLAINTIFF'S RESPONSE/REPLY RE: MOTIONS FOR
SUMMARY JUDGMENT - 4
2:25-cv-02142-MLP

**ANDERSON | SANTIAGO**
207B SUNSET BLVD. N
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

dog bite someone?"[4]  If yes, liability follows.  Notably, there is no exception for agents of dog owners; if a dog-walker is in control of the dog, any bites still remain the owner's responsibility.

That is the case here as well.  A collection agency may not "[s]erve a debtor with a summons and complaint unless the summons and complaint have been filed with the court and bear the case number assigned by the court."  RCW 19.16.250(27).  That is what happened here; the documents served on Mr. Johnson did not bear the case number assigned by the court.  All further inquiry is irrelevant.  MLG's intentions are irrelevant.  ABC Legal's reputation is irrelevant.  There is no carve-out exception for hiring licensed process servers.  As with all strict liability matters, the burden to ensure compliance rests with the party engaged in the activity (in this case, operating a collection agency).  MLG presumably derives many benefits from its collection agency operations, but one of the downsides is that MLG must also comply with the law and cannot outsource its obligations.

### D.  MLG's "Blame the Process Server" "Defense" is Inapplicable

The Washington Collection Agency Act is straightforward in its prohibition: A collection agency may not "[s]erve a debtor with a summons and complaint unless the summons and complaint have been filed with the court and bear the case number assigned by the court."  RCW 19.16.250(27).  MLG's argument (that MLG did not serve the summons, but a process server did) defies every bit of logic placed into the statute by our legislature; a collection agency may not circumvent the WCAA by subcontracting.[5]

---

[4] Plaintiff is aware that such issues may matter in other contexts, such as local ordinances related to animals and safety; the analogy here applies only to the imposition of liability under the strict-liability state law.

[5] To be abundantly clear, Plaintiff is not making any moral attributions as to anyone's conduct or intentions. There is, of course, no evidence that MLG deliberately conjured this scenario or otherwise conspired to arrive at the outcome whereby Mr. Johnson received a summons and complaint lacking a case number. At the same time, MLG's motivations or intentions are also irrelevant in the context of a strict liability statute. MLG may have feelings about its process server's actions (and/or potential recourse, though no third-party

PLAINTIFF'S RESPONSE/REPLY RE: MOTIONS FOR
SUMMARY JUDGMENT - 5
2:25-cv-02142-MLP

ANDERSON|SANTIAGO
207B SUNSET BLVD. N
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

"The WCAA, chapter 19.16 RCW, enacted in 1971, requires collection agencies to obtain a license, follow certain internal procedures, and adhere to a code of conduct." *Gray v. Suttell & Associates*, 181 Wn.2d 329, 334 (2014). When RCW 19.16.250 was amended in 2019, the legislature made specific findings, including:

> (1)(c) In the debt collection context, however, many defendants are unfamiliar with the legal process, and most are unrepresented. When served with an unfiled, unnumbered summons and complaint, these defendants do not always realize that they must respond to the unfiled case…;
> (1)(d) In the debt collection context, **many unrepresented defendants reasonably conclude that the unnumbered summons and complaint are not valid**…;
> (2) Therefore, the legislature intends to [require filing before service] to ensure that defendants understand that it is an existing court case, **are informed of the case number**, and receive adequate notice and a reasonable opportunity to respond and be heard to avoid default judgment.

2019 legislative findings to RCW 19.16.250, (1)(d) through (2), c 201 s1 (emphasis added). The plain purpose of RCW 19.16.250(27) is to ensure that an alleged debtor is served with a summons and complaint which are not only filed, but which "bear the case number assigned by the court."

MLG certainly wishes the statute were written otherwise, but the WCAA does not merely require that a collection agency file a case – it requires that the debtor is served with a lawsuit which has been filed and which has a visible case number.[6] Just like the hypothetical dog owner who is astonished to learn that their dog-walker was inattentive and allowed a dog to bite someone, MLG was probably taken by surprise to learn that its process server had served a case without a case number. In both cases, strict liability means the "buck stops here," meaning, with the regulated entity. The burden of compliance is on the collection agency, not its agents.

---

complaint was initiated), but MLG is the licensed collection agency and MLG is the entity that must comply with the WCAA.

[6] *See also* RCW 19.16.250(9), prohibiting certain communications "with a debtor… through a proper legal action, process, or proceeding." This provision, too, would be rendered void if a collection agency could claim that it was not communicating with the debtor through legal process, but the process server was doing so.

PLAINTIFF'S RESPONSE/REPLY RE: MOTIONS FOR
SUMMARY JUDGMENT - 6
2:25-cv-02142-MLP

**ANDERSON | SANTIAGO**
207B SUNSET BLVD. N
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

More to the point, *no collection agency serves its own lawsuits*.[7] MLG's argument (that its process server was the one who served the case without a case number) would render the statute meaningless and unenforceable. The remainder of MLG's arguments and assertions are either incorrect, unsupported, or both. *See* dkt. #14 at 8-9 (arguing that MLG complied by hiring ABC Legal (which is not what the WCAA requires), that ABC made an error (there is no evidence before the Court as to ABC's actions), or that agency principles somehow apply). If the WCAA prohibits a collection agency from serving a person with a case without a case number, then it cannot be sidestepped simply by hiring a contractor.[8]

The statutory text of RCW 19.16.250(27) places the onus on the collection agency to ensure that a debtor is served with a filed case bearing a case number. That did not occur here. This is dispositive of the inquiry.

**E.   A Collection Agency's Compliance With the WCAA is a Nondelegable Duty**

The Washington Supreme Court has explained that nondelegable duties may arise in a variety of contexts, including by statute or by regulation. In *Estate of Essex v. Grant Cnty. Pub. Hosp. Dist. No. 1*, 3 Wn.3d 1, 9 (2024), the court held that a hospital could not delegate its duties surrounding the provision of emergency care, and thus could not evade liability by retaining subcontracted "independent" emergency physicians. Part of the court's analysis examined the statutory framework (in that hospitals are subject to a variety of statutes and regulations, including

---

[7] While less common with law firm-collection agencies, collection agencies routinely bring lawsuits in their own name (known as an "assignment for collection," *see* RCW 4.08.080, a practice used in all manner of claims (and especially for medical debt, as hospitals do not like being the named plaintiff in lawsuits against patients)). Meanwhile, CR 4(c) and CRLJ 4(c) each prohibit parties (such as a collection agency as plaintiff) from serving process. It is exceedingly unlikely the legislature would enact a prohibition concerning service of collection lawsuits which *necessarily* could not apply to a large percentage of collection lawsuits.

[8] MLG's argument is akin to claiming that it does not send letters, but rather the U.S. Postal Service does because they transmit and deliver mail.

PLAINTIFF'S RESPONSE/REPLY RE: MOTIONS FOR
SUMMARY JUDGMENT - 7
2:25-cv-02142-MLP

**ANDERSON | SANTIAGO**
207B SUNSET BLVD. N
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

those "to promote safe and adequate care" to patients) and concluded it was incompatible with existing law to allow a hospital to simply delegate away its responsibilities imposed by the legislature. *Id*. at 9-12 ("Although hospitals may delegate the performance of this duty [concerning provision of emergency services] to nonemployee doctors, the ultimate duty—and thus the potential vicarious liability for the failure to meet that duty—remains with the hospital").[9]

MLG repeatedly refers to various tort principles and agency theories, which may not be particularly applicable in a strict liability context over statutory violations, but to the extent these apply, then the principles underlying nondelegable duties would also apply. Collection agencies (like hospitals) are required to be licensed, must adhere to a "code of conduct," and are bound by a variety of rules and regulations in order to lawfully conduct business. The legislature saw the peril created when debtors were served with unfiled/unnumbered lawsuits (ordinarily permitted by the Civil Rules) and imposed an obligation on collection agencies to ensure that this did not occur. MLG cannot contract away its obligations under RCW 19.16.250(27).

## F. **MLG Violated the FDCPA**

As Plaintiff previously briefed in his motion for summary judgment, MLG's liability arises under several statutes in slightly different ways. Dkt. #13 at 5-6. MLG violated RCW 19.16.250(27); a violation of the WCAA is itself a violation of the FDCPA. *See*, *e.g.*, *Weinstein v. Mandarich Law Grp., LLP*, 798 Fed. Appx. 88 (9th Cir. 2019) (violation of state court rules constitutes a violation of the FDCPA); *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 53 (2009) (noting interrelatedness and overlap of state and federal debt collection statutes in order to protect consumers).

---

[9] *See also Eylander v. Prologis Targeted U.S. Logistics Fund, LP*, 2 Wn.3d 401, 409, 539 P.3d 376, 378 (2023) ("A duty is also considered nondelegable when required by statute, contract, franchise, or charter, or by the common law") (citation omitted).

ANDERSON | SANTIAGO
207B SUNSET BLVD. N
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

Even absent the existence of the WCAA, Plaintiff asserts as a matter of law that serving a debt-collection lawsuit with an unintelligible case number is itself an unfair or deceptive means to collect a debt.  15 U.S.C. §§ 1692e (deceptive), 1692f (unfair or unconscionable).  A statement violates the FDCPA if it "may frustrate a consumer's ability to intelligently choose his or her response." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1121 (9th Cir. 2014) (citation omitted) ("the factual errors in [the collector's] letters to Tourgeman could easily cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort").  The "least sophisticated consumer" – the metric by which FDCPA violations are evaluated – would most certainly have difficulty determining the appropriate response or next step upon being served with a case lacking a real case number.  This FDCPA violation would thus constitute a violation of the Washington Consumer Protection Act (again, without reference to the WCAA in this analysis).  *See Hoffman v. Transworld Sys., Inc.*, 806 F.App'x 549 (9th Cir. 2020).

Plaintiff further asserts that – again, even absent the existence of the WCAA (including RCW 19.16.250) – MLG's actions independently violate the CPA.  It is *necessarily* an unfair or deceptive act or practice in trade or commerce to serve a collection lawsuit without an intelligible case number.[10]  *Panag*, 166 Wn.2d 27, 53 (2009) (noting that debt collection matters necessarily implicate the public interest, meeting that element as a matter of law).  As described in Plaintiff's existing briefing, this caused compensable injury to Mr. Johnson, and thus all five elements of a CPA claim are independently met on this basis as well.  *Id*.

In short, with or without RCW 19.16.250(27), MLG violated the CPA and FDCPA.

//

---

[10] This is particularly true for state district court lawsuits, which (unlike in Superior Court) can never be served in advance of filing, which means there is never a lawful basis to serve a defendant with a district court lawsuit which lacks a case number.

PLAINTIFF'S RESPONSE/REPLY RE: MOTIONS FOR
SUMMARY JUDGMENT - 9
2:25-cv-02142-MLP

**G. Defendant Has Failed to Meet Its Burden to Establish a Bona Fide Error Defense**

Defendant's motion for summary judgment primarily relies on its bona fide error defense (15 U.S.C. § 1692k(c)) absolves it of liability.[11]  The "bona fide error" defense is an affirmative defense.  *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008).  Affirmative defenses, of course, operate in spite of liability and do not negate the plaintiff's case.  *See Core Nutritionals, LLC v. Performance Nutrition Formulators, LLC*, 2016 WL 9175662 at *1 (C.D. Cal. May 16, 2016) ("An affirmative defense is not a defense that simply negates elements of a plaintiff's claim, but rather a defense that precludes liability despite the plaintiff being able to establish a prima facie case.") (citing *Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002)); *see also Fed. Deposit Ins. Corp. v. Main Hurdman*, 655 F. Supp. 259, 262 (E.D. Cal. 1987) ("Affirmative defenses plead matters extraneous to the plaintiff's prima facie case, which deny plaintiff's right to recover, even if the allegations of the complaint are true").

In any event, as with all affirmative defenses, the bona fide error defense is one for which the debt collector has the burden of proof.  *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994).  As the party carrying the burden of proof, MLG must come forth with evidence to prove the bona fide error defense.  A defendant asserting "bona fide error" bears the burden of establishing that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation.  *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011) (citation omitted).

In connection with the foregoing, MLG must further show that it (A) actually employed or implemented the procedures; and (B) the procedures are reasonably adapted to avoid the specific

---

[11] The defense, if all elements are proven, applies to federal claims under the FDCPA, not to any state law claims.

PLAINTIFF'S RESPONSE/REPLY RE: MOTIONS FOR
SUMMARY JUDGMENT - 10
2:25-cv-02142-MLP

**ANDERSON | SANTIAGO**
207B SUNSET BLVD. N
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

errors at issue. *Reichert*, 531 F.3d 1006. Doing this "require[s] more than a mere assertion" that procedures were maintained and reasonably adapted; "[t]he procedures themselves must be explained, along with the manner in which they were adapted to avoid the error." *Id*. at 1007. MLG pays lip service to the bona error defense, but tellingly fails to identify the elements or provide evidence to support any element as required in the Ninth Circuit.

### 1. *Unintentional violation of the FDCPA*

Plaintiff need not dispute this element, although "intent" with respect to the bona fide error defense does not mean "malicious intent to violate the law," but rather that conduct was deliberately undertaken. Nevertheless, to avoid wasting time, Plaintiff will presume that MLG unintentionally violated the FDCPA.

### 2. *Violation resulting from a bona fide error*

MLG, appropriately, admits it "does not have personal knowledge as to what may have happened," but then proceeds to speculate about what it believes might have transpired. Dkt. #14 at 11, lines 24-25. MLG appears to operate from the premise that there "must have been" an error, which is not what the affirmative defense requires. MLG must first demonstrate what the "error" was, because the remainder of the defense requires establishing the existence of procedures designed to avoid that specific error. If the error is not known, by extension, there can be no procedures to address it.

### 3. *Maintenance of procedures reasonably adapted to avoid the violation*

Again, MLG must establish that it (A) actually employed or implemented the procedures; and (B) the procedures are reasonably adapted to avoid the specific errors at issue. *Reichert*, 531 F.3d 1006. Doing this "require[s] more than a mere assertion" that procedures were maintained

PLAINTIFF'S RESPONSE/REPLY RE: MOTIONS FOR
SUMMARY JUDGMENT - 11
2:25-cv-02142-MLP

**ANDERSON | SANTIAGO**
207B SUNSET BLVD. N
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

and reasonably adapted; "[t]he procedures themselves must be explained, along with the manner in which they were adapted to avoid the error." *Id*. at 1007.

In *Amaya v. Sentry Credit, Inc.*, 798 F. Supp. 3d 1263 (W.D. Wash. 2025), Judge Zilly examined the debt collector's "bona fide error" defense, which was primarily that it relied on the original creditor to provide accurate information. Following *Reichert*, Judge Zilly ruled that simply relying on another party to do the right thing (such as only refer valid debts for collection) was not a "procedure" at all, and thus the defense was unavailable. *Id*. at 1272 ("Defendant here identifies no internal procedure designed to prevent the reporting of a debt not owed; rather, it attempts to outsource responsibility to the creditor"); *see also Creager v. Columbia Debt Recovery*, 2022 WL 2982825 at *5 (W.D. Wash. July 28, 2022) (reliance on creditor is not a procedure).

Similarly, in *Frias v. Patenaude & Felix APC*, Judge Coughenour also examined the elements of a "bona fide error" defense, underscoring that the "defense is a 'narrow exception' to the general rule of strict liability under the FDCPA." 2022 WL 136816 at *5 (W.D. Wash. Jan. 14, 2022) (quoting *Reichert*, 531 F.3d at 1005). As a result of the debt collector's myriad assertions of errors and procedures, Judge Coughenour embarked on a thorough analysis of what the "bona fide error" defense actually requires, which is instructive here as well. *Id*. at *4-*6. In short, a debt collector's "procedures" must be designed appropriately to avoid the error at issue; it is insufficient to simply have a variety of procedures if they would not have prevented the error.

### 4. MLG has no procedures reasonably adapted to avoid any violation

The facts before this Court are straightforward: Mr. Johnson was served with a lawsuit which bore no case number, contrary to Washington law. MLG evidently provides its process server with a summons and complaint, with the understanding that the process server is to file and serve those documents. MLG's "process" or "procedure" is, evidently, that it sends the summons

and complaint to its process server to file and serve.  Dkt. #15 at ¶¶ 11-13.  This is not a "procedure" under the FDCPA; rather, this is nearly identical to the failed argument in *Amaya*, 798 F. Supp. 3d 1263, where the debt collector's "procedure" was to rely on the creditor to provide accurate information.  Just like in *Amaya*, MLG "attempts to outsource responsibility," in this case, to its process server.  *Id*. at 1272.

Indeed, MLG's "procedure" – to the extent taking a series of steps constitutes a procedure – is susceptible to having the same problem(s) occur yet again in the future.[12]  Assuming ABC Legal caused some condition/error which then resulted in service on Mr. Johnson of a case without a case number, MLG's "procedure" of blindly sending documents to ABC for service and filing has no possible way of "avoiding" any similar error.  MLG's testimony that it receives a file-stamped copy back from ABC is even more concerning, because this simply lulls MLG into believing that everything was done correctly – it does absolutely nothing to **prevent** an error from occurring in the first place.  Dkt. #15 at ¶¶ 13-14.

MLG's briefing also sidesteps any discussion of how any error could be prevented by virtue of this "procedure."  Instead, MLG attempts to focus on an entirely different issue – whether ABC "properly accomplished the filing" of the lawsuit, which is not at issue.  Dkt. #14 at 12.  Instead, MLG spends the remainder of its brief arguing that it did not know, or have reason to know, what happened.  First, this is irrelevant – MLG's knowledge or lack thereof is immaterial.  Second, this is somewhat concerning that MLG has outsourced its obligations to the point that it has no idea what it is causing to be served on alleged debtors.  This is not a point in MLG's favor, and certainly does not constitute a valid defense.

---

[12] For purposes of this analysis, Plaintiff will assume, *arguendo*, that ABC Legal made some indeterminate error.  Nevertheless, MLG's inability to meet its burden of proof as to the "error" portion of its "bona fide error" defense is also fatally problematic.

PLAINTIFF'S RESPONSE/REPLY RE: MOTIONS FOR
SUMMARY JUDGMENT - 13
2:25-cv-02142-MLP

**ANDERSON | SANTIAGO**
207B SUNSET BLVD. N
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

### *5.  Conclusion: MLG's bona fide error defense fails*

This is not a close call.  Even assuming the existence of an error – a hypothetical event for which MLG admits it has no personal knowledge – MLG's "procedure" is one which would simply replicate the same (alleged) "error" over and over again.  Simply relying on a process server to do everything is no different than simply relying on a creditor to provide perfect, flawless information – neither meets the rigorous three-part test mandated by the Ninth Circuit to qualify for the bona fide error defense.  MLG cannot meet its burden, and summary judgment in Plaintiff's favor is appropriate.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that his motion for partial summary judgment be granted and Defendant's motion be denied.

I certify that this memorandum contains 4,349 words, in compliance with the Local Civil Rules.

Dated this 13th day of July, 2026.

**ANDERSON SANTIAGO, PLLC**

By: /s/ Jason D. Anderson
Jason D. Anderson, WSBA No. 38014
T. Tyler Santiago, WSBA No. 46004
Attorneys for Plaintiff
207B Sunset Blvd. N
Renton, WA 98057
(206) 395-2665
(206) 395-2719 (fax)

PLAINTIFF'S RESPONSE/REPLY RE: MOTIONS FOR
SUMMARY JUDGMENT - 14
2:25-cv-02142-MLP

**ANDERSON | SANTIAGO**
207B SUNSET BLVD. N
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719